# ORIGINAL

# In the United States Court of Federal Claims

No. 13-023C
(Filed July 31, 2013)
NOT FOR PUBLICATION

**FILED**

JUL 3 1 2013

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                            *
                                            *
MARY ELAINE PERKINS,                        *
                                            *
              Plaintiff,                     *
      v.                                     *
                                            *
THE UNITED STATES,                          *
                                            *
              Defendant.                     *
                                            *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

This case is before the Court on defendant's motion, under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss for lack of subject-matter jurisdiction.  For the reasons discussed below, the motion is **GRANTED.**

### I.  BACKGROUND

Plaintiff Mary Elaine Perkins, currently incarcerated at a federal prison in Adelanto, California, seeks relief from restitution and court fees which are being withheld by the Department of Justice at the rate of $25 per month.  Am. Compl. ¶¶ 5, 7.  Prior to the filing of the amended complaint $275 had already been withheld, and the total amount to be recovered is $17,128,726.43.  Am. Compl. ¶ 5.  The money is being withheld pursuant to 18 U.S.C. section 3663A, which authorizes restitution payments to victims of a defendant who has been criminally convicted of a broad range of crimes, and 18 U.S.C. section 3013(a)(2)(A), which allows a special assessment of $100 on persons who have been convicted of a felony.  *See* Am. Compl. ¶ 2.

The theory underlying plaintiff's claim is that Public Law 80-772 --- commonly understood to have enacted Title 18 of the United States Code, which concerns federal crimes and criminal procedure --- was never properly passed, and that as a consequence, 18 U.S.C. section 3231 (which grants the district courts of

the United States their jurisdiction over offenses against the laws of the United States) was never legally enacted. Am. Compl. ¶¶3-5; *see also* Ex. 1 to Compl. Passage was improper, according to Ms. Perkins, because of the lack of a quorum in the lower chamber of the 80th Congress. This theory, among other things, is detailed in Exhibit One to plaintiff's initial complaint, entitled "History of Public Law 80-772."[1] Since only the lack of a quorum is identified in the complaint as the basis for plaintiff's claim, *see* Am. Compl. ¶ 3, the Court will disregard any other purported irregularities in the enactment of Public Law 80-772 that are described in this exhibit.[2] According to plaintiff, the House of Representatives' passage of H.R. 3190 on May 12, 1947, occurred without the constitutionally required quorum, and is thus void. Ex. 1 at 3. As a consequence, according to this theory, the subsequent agreement of the House to amendments made to the bill by the Senate had no effect, as, while the House may have "agreed" to the amendments, the bill was never actually passed in the first place. *Id.* at 4. This is said to violate federal constitutional provisions under Article I, Section 5, Clause 1, which requires a majority of each legislative chamber as a quorum to do business, and Article I, Section 7, Clause 2, which requires that each bill pass both chambers of the legislature and be signed by the President before becoming law. *Id.* at 5-11.

Plaintiff offers various supporting exhibits in an effort to substantiate this claim. Exhibit Two to the Complaint is supposedly a letter from the Clerk of the

---

[1] This exhibit is not attributed to any particular author, and contains some theories and claims that are not raised by the plaintiff in her complaint. For instance, Exhibit One discusses a theory that the bill was invalidly signed by officers of the two chambers of Congress during an adjournment. *See* Ex. 1 at 3-11; Am. Compl. ¶ 3. Exhibit One also contains an entire section on the unlawfulness of maintaining an individual in custody in light of the purported non-enactment of Public Law 80-772, although the scope of the relief plaintiff seeks is limited to the money she alleges was improperly withheld. *See* Ex. 1 at 11-13; Am. Compl. ¶ 7. Plaintiff's exhibits appear to be a package of documents that have frequently been used by inmates pursuing similar theories in various federal courts. *See Cardenas-Celestino v. United States*, 552 F. Supp. 2d 962, 966 (W.D. Mo. 2008) (describing arguments similar to the plaintiff's in this case as part of a "new rash of frivolous claims raised by prisoners across the country, many of whom have copied the arguments directly from legal websites which propound the argument . . . developed by a Texas firm, International Legal Services.").

[2] The main additional theory in the exhibit seems to be that once Congress had adjourned as of June 20, 1948, it ceased to legally exist, but the Speaker of the House and President pro tempore of the Senate nonetheless signed the enrolled bill on June 22 and 23, 1948 --- after which the bill was signed by the President on June 25, 1948. Ex. 1 at 4-5.

House of Representatives, addressed to a third party and dated June 28, 2000, which indicates that Title 18 was not voted on by the House in June of 1948.[3] Exhibit Three to the Complaint is purportedly a letter from a subsequent Clerk of the House of Representatives, dated September 11, 2006 and addressed to no one in particular, indicating that: 1) the Clerk could not find an entry in the House Journal for a vote on H.R. 3190 on May 12, 1947; 2) no action was taken on the bill by the Senate prior to the "sine die adjournment" on December 19, 1947; 3) the Congressional Record indicates that an amendment to the bill passed by a thirty-eight to six vote on May 12, 1947; and 4) the House Rules require a listing of members present but abstaining when a bill is passed by less than a majority of a quorum.  Exhibit Four to the Complaint is allegedly a March 9, 2009 letter from the Secretary of the Senate, addressed to yet another third party, indicating that no action was taken on H.R. 3190 by that body prior to a "December 19, 1947 sine die adjournment."  Exhibit Five to the Complaint appears to be an internal memo from the Director of the Federal Bureau of Prisons, sent July 27, 2009, which indicates that --- after finding that there was no record of a quorum being present during the May 12, 1947 vote on H.R. 3190, and that such a quorum would have been necessary to pass the bill --- the Director concluded that the 1909 version of the Federal Criminal Code had never been repealed, and that the true authority of the Bureau to hold inmates is derived from the predecessor to Public Law 80-772. Exhibit Six to the Complaint is supposedly an August 24, 2010 letter from the Office of the Clerk of the House of Representatives, lacking a signature and addressed to no one in particular, indicating that there is no record of the names of the 44 members who responded to the May 12, 1947 voice vote on H.R. 3190.[4]

The government has filed a motion to dismiss the amended complaint for lack of subject-matter jurisdiction.  Def.'s Mot. to Dismiss ("Def.'s Mot.")  In that motion it advances several arguments.  The government argues first that plaintiff has failed to make out a claim under a money-mandating source, as: 1) plaintiff relies

---

[3] The Court notes that plaintiff cannot credibly vouch for the authenticity of any of these exhibits to her initial complaint.

[4] In plaintiff's amended complaint, she raises her theory that due to a failure by the Justice Department to respond in a timely fashion to a document styled as a "Request for Answer to Certified Question of Law," the Justice Department and the Attorney General "have accepted as true the Stipulated Answers" provided by defendant's "Affidavit of Notice of Default for Failure to Respond."  Am. Compl. ¶ 6; Ex. 7 to Am. Complaint.  The "Affidavit of Notice of Default for Failure to Respond" is attached to the Amended Complaint as Exhibit Seven.  Plaintiff does not explain the basis for her belief that a private citizen can send a "Certified Question of Law" to the Department of Justice, nor does she explain why a failure to respond to such a communication would operate to decide any issues of relevance to this case.  The Court will therefore not discuss the point further.

on provisions of the criminal code for her claim, and the Court is without jurisdiction to entertain such claims, *id.* at 3-4 (citing *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994)); 2) to the extent she might be raising a constitutional claim under the Fourth, Fifth, and Fourteenth Amendments, these provisions do not require the payment of money, Def.'s Mot. at 4; and 3) to the extent plaintiff is alleging a violation of her constitutional rights by the Attorney General in his individual capacity, the Court lacks jurisdiction, as its jurisdiction is limited to suits against the United States. *Id.* (citing *Treece v. United States*, 96 Fed. Cl. 226, 231 (2010)). The government also argues that various courts have considered the substance of plaintiff's claim --- that Public Law 80-772 was not properly passed --- and affirmed the law's validity, thus rendering plaintiff's claim frivolous. *Id.* (citing *United States v. Penwell*, 455 Fed. App'x 181, 183-84 (3rd Cir. 2011)).[5]

Plaintiff filed a response to defendant's motion to dismiss. *See* Pl.'s Resp. to Def.'s Mot. at 1-3. She asks the Court to take judicial notice of the Constitution, the Congressional Record, the proceedings and journals of Congress, and the various dates associated with the passage of Public Law 80-772, and reiterates her theory that the law was not properly enacted due to the lack of a quorum. *Id.* at 1-2. Plaintiff argues that "because her Constitutional rights were violated she has had her money confiscated without due process." *Id.* at 3.

## II. DISCUSSION

Under RCFC 12(b)(1), a complaint must be dismissed when it is shown that the Court lacks jurisdiction over the complaint's subject matter. When considering a motion to dismiss for lack of subject matter jurisdiction, the Court will normally accept as true all factual allegations made by the pleader and draw all reasonable inferences in a light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (requiring that on a motion to dismiss for lack of subject matter jurisdiction the Court views "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate"). While pro se plaintiffs' filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this lenity cannot insulate from dismissal a case that falls outside our jurisdiction. *See, e.g., Henke v. United States*,

---

[5]   The government also notes that, if a reference to "Tort" in plaintiff's Exhibit Seven were read as an attempt to state a claim, our court lacks jurisdiction over such claims. Def.'s Mot. at 5 (citing, *inter alia*, 28 U.S.C. § 1491(a)(1); *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997)). And the government contends that we lack jurisdiction to issue the injunctive relief requested by plaintiff --- as our remedies are generally limited to affording monetary, not injunctive, relief, and none of the limited set of applicable circumstances in which injunctive relief would be proper are applicable. *See* Def.'s Mot. at 5-6.

60 F.3d 795, 799 (Fed. Cir. 1995). Because the Tucker Act, 28 U.S.C. § 1491, does not create any substantive rights, a plaintiff must identify a separate source of law that creates a right to money damages for her claim to be within our jurisdiction. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). The test for determining whether a statute or regulation can support jurisdiction in our court is whether it can be fairly interpreted as mandating compensation. *See, e.g., United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003); *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983); *Fisher*, 402 F.3d at 1173–74; *Contreras v. United States*, 64 Fed. Cl. 583, 588–92 (2005). The claim of a money-mandating source of law must be "a non-frivolous allegation." *Twp. of Saddle Brook v. United States*, 104 Fed. Cl. 101, 110 (2012) (citing *Fisher*, 402 F.3d at 1172).

Several of the government's arguments seem to be errant or misguided. A passage from *Joshua v. United States* is cited, which is merely a block quote from the opinion below, *see Joshua*, 17 F.3d at 379, and which concerns allegations of *violations* of provisions from Title 18. Plaintiff is not alleging that Title 18 contains money-mandating provisions, but rather that money has been exacted from her under color of Title 18 and in violation of the Constitution. Nor is the government correct in suggesting that (other than under the Takings Clause, one presumes) the Fifth Amendment cannot be a basis for our jurisdiction. It is well-established that our court has jurisdiction over suits seeking to recover "money improperly exacted or retained," *United States v. Testan*, 424 U.S. 392, 401 (1976), without the need for any money-mandating provision. These illegal exactions may be based on allegations that the money exacted exceeds that authorized by statute, such as in tax refund claims, *see Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605 (1967), or that the exaction violates a Constitutional provision --- including the Due Process Clause of the Fifth Amendment. *See Casa de Cambio Comdiv. S.A. de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002); *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996).

Indeed, the predecessor to our court and to the Federal Circuit had held, in *Mallow v. United States*, that the Due Process Clause was the basis for jurisdiction over a claim for the refund of fines imposed and collected through an unconstitutional court-martial proceeding. *Mallow v. United States*, 161 Ct. Cl. 446, 449-50, 454 (1963). But unlike the situation presented in *Mallow*, where the Supreme Court in a series of unrelated cases had already found that the challenged practice violated the constitutional rights of civilians, *id.* at 449-50, here the plaintiff asks our court to determine that her criminal conviction was unconstitutional. The Court concludes that such a request is beyond the subject-matter entrusted to our jurisdiction.

This Court lacks jurisdiction to consider claims which amount to collateral attacks on criminal convictions. *See Carter v. United States*, 228 Ct. Cl. 898, 900

(1981) (rejecting claim, under various constitutional provisions, for money damages and correction of criminal records, and holding that "[i]f plaintiff had valid constitutional defenses to his convictions on criminal charges, he should have asserted them on appeal in the proper court. This is not such a court and he cannot here be heard to make a collateral attack on his convictions under the guise of a claim for money damages."); *Black v. United States*, 84 Fed. Cl. 439, 450-52 (2008) (rejecting Fifth Amendment takings claim by plaintiff as collateral attack upon civil and criminal actions in previous courts); *Allamby v. United States*, No. 09-868-C, 2010 WL 307883, at *2 n.2 (Fed. Cl. Jan. 21, 2010) (rejecting claim for damages pursuant to purported unjust conviction for tax evasion to the extent it was a collateral attack on prior criminal conviction); *see also Kania v. United States*, 227 Ct. Cl. 458, 465 (1981) (noting that "the role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court."). While the Court of Federal Claims does have jurisdiction to award compensation to the unjustly convicted and imprisoned under 28 U.S.C. sections 1495 and 2513, "the court's jurisdiction to entertain a claim for money damages for unjust conviction arises only *after* the challenged conviction has been reversed, on grounds of innocence, by a court of competent jurisdiction or by Presidential pardon." *Lott v. United States*, 11 Cl. Ct. 852, 853 (1987); *accord Ekberg v. United States*, 110 Ct. Cl. 267, 270 (1948); *Carter v. United States*, 228 Ct. Cl. at 899. Plaintiff makes no claim regarding any determination of her innocence, and in fact remains in federal custody. Thus, the Court lacks jurisdiction over her claim.[6]

Moreover, plaintiff's claim appears completely frivolous. Both the specific theory considered here and related spurious challenges to Title 18's enactment have been considered and rejected by a number of courts. *See, e.g, United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007) (describing challenge to constitutionality of Title 18 as "unbelievably frivolous"); *United States v. Levy*, 849 F. Supp. 2d 1353, 1356-1357 (S.D. Fla. 2012) (rejecting a Quorum Clause challenge to Title 18); *Cardenas-Celestino*, 552 F. Supp. 2d at 966-967 (collecting citations rejecting various constitutional challenges to Title 18). As one district court explained, in rejecting this same Quorum Clause argument, the allegedly insufficient thirty-eight to six vote was on an *amendment* to H.R. 3190, not the bill itself. *Levy*, 849 F. Supp. 2d at 1356. That court took notice of the official Journal of the House of Representatives, which "explicitly states that 297 Members were present on May 12, 1947," and confirms that the bill passed that day. *See id.* at 1356-1357, 1374-76;

---

[6] The Court notes that the so-called enrolled bill rule may also be a bar to the consideration of this case. This rule prevents a court from inquiring into whether an enrolled bill, attested as having been passed by "the two houses, through their presiding officers," was in fact passed. *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).

*see also* H. JOURNAL, 80th Cong., 1st Sess. 341, 343 (1947); 93 CONG. REC. 5049 (1947).  Thus, if the Court were to follow plaintiff's request and take notice of the House Journal, it would have to conclude that a quorum of House members was present on May 12, 1947 and passed the bill in question.  Plaintiff's claim, thus, amounts to a *non sequitur* --- the argument that the fact that less than a quorum of the House participated in a vote on an amendment to a bill means that less than a quorum was present when the bill was approved.  This is, in a word, frivolous.

### III.   CONCLUSION

For the reasons explained above, the Court concludes that it lacks jurisdiction over the subject-matter of this complaint  Accordingly, defendant's motion to dismiss is **GRANTED**, and the Clerk shall close the case.[7]

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Judge

---

[7] Despite the frivolity of this case, the government did not file an opposition to plaintiff's application to proceed *in forma pauperis*, and the Court as a consequence hereby **GRANTS** the application.